IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 17, 2017 Session

## JAMES MCKINLEY CUNNINGHAM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Grundy County**
**No. 6751     Larry B. Stanley, Jr., Judge**

_____

**No. M2017-00348-CCA-R3-PC**

_____

Petitioner, James McKinley Cunningham, was convicted of first degree murder after shooting his father. The conviction was affirmed on direct appeal. *State v. James McKinley Cunningham*, No. M1999-01995-CCA-R3-CD, 2000 WL 1520247, at *1 (Tenn. Crim. App. Oct. 13, 2000), *perm. app. denied* (Tenn. Apr. 23, 2001). Petitioner initially sought post-conviction relief in 2002 and amended the petition in 2015. Nearly fourteen years after the original petition was filed, the post-conviction court held a hearing and denied relief. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Robert S. Peters, Winchester, Tennessee, for the appellant, James McKinley Cunningham.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Mike Taylor, District Attorney General; and David Shinn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Nearly twenty-one years ago, Petitioner shot and killed his father. He loaded the body into the trunk of his mother's car, drove to a remote location near Monteagle, Tennessee, and dumped the body in a ravine. Then, he burned a sofa, disposed of his father's clothing, and got rid of the murder weapon. *Id.* at *1. Shortly thereafter,

Petitioner, his girlfriend, and his mother fled to Oklahoma.  *Id*.  All of these facts have never been disputed by Petitioner.

After a jury trial, Petitioner was convicted of first degree murder and sentenced to life imprisonment.  His conviction was affirmed on direct appeal and the Tennessee Supreme Court denied permission to appeal on April 24, 2001.

Petitioner filed a lengthy pro se petition for post-conviction relief.  The petition certified that it was given to prison authorities for mailing on April 18, 2002, but the petition was not filed until April 24, 2002.[1]  The rambling petition spanned nearly forty pages and raised various grounds for relief, including allegations that Petitioner's confession was coerced, his arrest was unlawful, his conviction was based on a violation of the privilege against self-incrimination, the State failed to disclose evidence favorable to the defense, his conviction was based on illegal evidence, his conviction was based on the action of an unconstitutionally impaneled grand jury, he received ineffective assistance of trial counsel, and "other grounds."  Post-conviction counsel was appointed to represent Petitioner in August of 2002.

On June 19, 2002, the State answered the petition, arguing that it was barred by the statute of limitations.  That same day, a transport order was filed to transport Petitioner to the Circuit Court of Grundy County for a hearing on August 7, 2002.  For reasons unbeknownst to this Court, nothing appears in the technical record after the transport order until a Motion to Set Aside Order of Dismissal was filed by Petitioner through post-conviction counsel on April 2, 2015.  According to the motion, Petitioner sought to have the "order of dismissal" set aside to consider an amended petition for post-conviction relief in which Petitioner wished to raise a Sixth Amendment violation alleging ineffective assistance of trial counsel in the plea bargaining process.  We have

---

[1] Rule 49(d)(1) provides the following with regard to "Service by Pro Se Inmate":

(1) When Deemed Filed.  If a paper required or permitted to be filed pursuant to the rules of criminal procedure is prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and is not received by the court clerk until after the deadline for filing, the filing is timely if the paper was delivered to the appropriate individual at the correctional facility within the time set for filing.  This provision also applies to service of papers by such litigants pursuant to the rules of criminal procedure.

Therefore, even though the petition at issue herein was stamped filed by the trial court one day past the one-year statute of limitations, the petition was timely delivered to the appropriate person at the correctional facility.  Thus, the petition was timely.

been unable to locate an order of dismissal in the technical record.[2]  Thus, it appears that the petition for post-conviction relief languished in the post-conviction court for fourteen years until Petitioner filed an amended petition for post-conviction relief.  The amended petition, filed on April 20, 2015, adopts the allegations raised in the original petition and raises additional grounds for relief including the ineffective assistance of counsel in the plea bargaining phase of trial.[3]

At the hearing on the petition for post-conviction relief, pretrial counsel testified that he represented Petitioner prior to trial.  At the time of the hearing, he was seventy-two years of age.  Pretrial counsel served as the District Public Defender of the 12th Judicial District in 1989 and practiced law for approximately forty years, retiring in 2012.  Several other attorneys in the Public Defender's Office represented Petitioner prior to the time pretrial counsel became involved in the case.  Pretrial counsel met with Petitioner several times to discuss the case.

Pretrial counsel explained that the common procedure in the district was to have a "discussion day" in each case prior to trial.  The discussion day was the equivalent of a settlement conference.  He represented Petitioner for a short period of time before he withdrew from the case.  Pretrial counsel could not recall the reason for the withdrawal but recalled that in June of 1998, prior to his withdrawal, he extended a written offer of settlement to the Assistant District Attorney General.  In the letter, Petitioner offered to enter a plea to voluntary manslaughter in exchange for a six-year sentence.  Pretrial counsel did not recall the receipt of a counteroffer and testified that in "rare" cases, there are no settlement offers from the State prior to trial.

A handwritten note from December 8, 1997, was introduced for identification purposes.  The unsigned note memorialized a meeting at the courthouse during which the State made an offer of second degree murder in exchange for a twenty-year sentence.  Pretrial counsel testified that he had never seen the note and did not recall receiving or communicating an offer of second degree murder to Petitioner but testified that "regardless of [his] opinion about [a plea offer,] it's the client's decision."

---

[2] According to the State's brief, the State "took steps to supplement the record with the order of dismissal but a review of the court docket report of the case showed that a copy of the order was mailed to post-conviction counsel but never filed."

[3] The record also contains a petition for writ of error coram nobis filed on December 7, 2015, alleging ineffective assistance in the plea bargaining phase.  It is unclear from the technical record if or how the trial court ruled on the petition for writ of error coram nobis.  Thus, the issues raised in the petition for writ of error coram nobis are not part of the present appeal.

Trial counsel was appointed after the withdrawal of pretrial counsel.[4] Trial counsel started practicing law in 1987, and his practice consisted of approximately fifty percent criminal law at the time he was appointed to represent Petitioner. Trial counsel did not "have a recollection" of plea negotiations happening prior to being appointed to represent Petitioner. Trial counsel had some discussions about the case with pretrial counsel but could not "specifically remember [the content of] any conversations."

Trial counsel explained that, ordinarily, "the State makes an offer and the defense says yes or no, or comes out with a counteroffer." Trial counsel recalled a discussion with the State that occurred in the courtroom prior to trial. He remembered "something along the lines that if you would make a second degree offer to us[,] we would take a hard look at it, or we would probably accept it, or something like that. I took it to be the equivalent of a second degree offer." Trial counsel recalled Petitioner said he could "do better than that." Trial counsel explained that was the end of the exchange and that no further plea negotiations ensued. Trial counsel admitted that he "should have" brought the matter up again with Petitioner but that he did not revisit the issue prior to trial. Trial counsel agreed that he should have made a "greater effort" to settle the case. Trial counsel commented that he "did not at that time totally appreciate the impact that the fact that the victim was [Petitioner's] father was going to have on the jury." In hindsight, he "would have had a serious heart to heart with him about recommending the offer" but thought that there was a "shot at [a] voluntary manslaughter [conviction]."

The Assistant District Attorney involved in the prosecution of Petitioner testified at the hearing. He started working at the District Attorney's Office in 1990. Petitioner's case was originally handled by someone else in the District Attorney's Office who became sick and died prior to Petitioner's trial.

The Assistant District Attorney testified that it was his practice to make written plea offers but that any formal offer was first approved by the District Attorney General. He did not recall a specific meeting with trial counsel with regard to settlement but did not dispute that the conversation may have occurred. The Assistant District Attorney recognized the handwriting on the note referencing the meeting and second degree murder offer as that of one of the investigators in his office. However, the Assistant District Attorney testified that any formal offer would have been conveyed in the form of a letter. He further testified that there was no letter in the file in which a plea offer was extended to Petitioner prior to trial. He recalled Petitioner's case as "just one of those cases that was going to have to be tried." The Assistant District Attorney explained that

---

[4] Trial counsel testified that there was at least one other attorney appointed to represent Petitioner for a short time, but he could not recall when this attorney was appointed or for what length of time he actually represented Petitioner. According to pretrial counsel, this other attorney represented Petitioner after his withdrawal but prior to the appointment of trial counsel.

Petitioner "was [willing to plead guilty to] voluntary [manslaughter], and . . . [when the State did not accept his offer, the Assistant District Attorney did not] recall any further discussions." He testified that the State "never extended an offer in this case at all."

Petitioner testified that he was forty-one years of age at the time of the hearing. He admitted responsibility for killing his father and never insisted that he was innocent. In fact, Petitioner claimed that he was "provoked" by his father because of the things his father was doing to his girlfriend and the "years and years" of his father's beating Petitioner's mother and stepmother. Petitioner wanted to settle the case prior to trial and thought "it was the law" that the State would "offer a plea bargain."

Petitioner explained that he had five attorneys over the course of the two years leading up to his trial. Petitioner recalled that pretrial counsel submitted a letter to the State in which Petitioner offered to plead guilty to voluntary manslaughter. According to Petitioner, pretrial counsel did not inform Petitioner whether the offer was accepted or rejected and actually withdrew from representation soon thereafter. However, Petitioner recalled telling pretrial counsel that he would "take second degree murder." Petitioner "want[ed] to say" that pretrial counsel communicated his intent to the State but could not be certain. Petitioner recalled having "at least three" discussions about a plea negotiation with pretrial counsel before he was replaced by trial counsel. Trial counsel told Petitioner that there was "never" a plea offer from the State. Petitioner recalled trial counsel being "confident" about the case, but Petitioner never wanted to go to trial. Petitioner explained that he was guilty and he "didn't want to get the maximum time." He wanted to "plead out and get it over with." Petitioner "wouldn't say [that he was] confident" in trial counsel's ability, even though he acknowledged that trial counsel had previously represented his father and "got him off a murder case."

The post-conviction court entered an order denying relief. In the order, the post-conviction court recounted Petitioner's complaint that "his attorney did not pass on an offer from the State to settle the case, and/or did not attempt to negotiate a plea for him with the State." The post-conviction court determined that there was "no conclusory evidence from the proof that [Petitioner's] attorneys ever received an offer from the State of which they did not inform [Petitioner]." In other words, trial counsel was not ineffective. Petitioner now appeals the denial of post-conviction relief.

*Analysis*

On appeal, Petitioner argues that the post-conviction court erred by determining that trial counsel was effective. Specifically, Petitioner argues that trial counsel made no attempt to obtain a response to his original offer of settlement and failed to negotiate a plea. Moreover, Petitioner argues that the State should "bear some responsibility" for

failing to enter into plea negotiations. The State disagrees, insisting that the State is "under no obligation to settle a case or engage in settlement talks."

*A. Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

*B. Ineffective Assistance of Trial Counsel*

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

We note that a criminal defendant is entitled to the effective assistance of counsel throughout the plea negotiation process. *See Harris v. State*, 875 S.W.2d 662, 666 (Tenn. 1994); *see also Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (applying the two-part *Strickland* test to claims of ineffective assistance of counsel during plea negotiations). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). "'[A] lawyer must abide by his client's decision [to accept or reject a plea] only after having provided the client with competent and fully informed advice, including an analysis of the risks that the client would face in proceeding to trial.'" *Nesbit v. State*, 452 S.W.3d 779, 800 (Tenn. 2014) (quoting *Burt v. Titlow*, 134 S.Ct. 10, 19 (2013)).

> [A] defendant claiming that trial counsel's performance was deficient in the plea negotiations process has the burden to show by a reasonable probability that, but for counsel's deficient representation, (1) the defendant would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms

of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed.

*Id.* at 800-01 (citing *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)).

In this case, the post-conviction court determined that Petitioner failed to show that the State ever actually extended a plea offer. According to the testimony at the hearing, pretrial counsel extended an offer to the State that Petitioner was willing to enter a plea to voluntary manslaughter. There was no testimony at the hearing showing that the State responded to the offer or extended a counteroffer with the exception of a handwritten note referencing second degree murder. The Assistant District Attorney testified that the common practice was for any offer to be extended in a formal letter to a defendant. He testified that no offer was extended in Petitioner's case. The evidence does not preponderate against the determination of the post-conviction court. Certainly, trial counsel cannot be found ineffective for failing to communicate an offer to Petitioner that never existed. Moreover, we note that the State was under no obligation to enter into plea negotiations with Petitioner. Tenn. R. Crim. P. 11(c)(1) ("The district attorney general and the defendant's attorney, or the defendant when acting pro se, *may* discuss and reach a plea agreement.") (emphasis added). When the State rejected Petitioner's original offer to plead guilty to voluntary manslaughter, trial counsel rightfully prepared for trial. Petitioner has failed to show that trial counsel's actions were ineffective.

*Conclusion*

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE